IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JOE HAND PROMOTIONS, INC.,      *
                                *
        Plaintiff,              *
                                *
        v.                      *      CV 124-178
                                *
IKONZ SPORTS BAR & GRILL,       *
LLC d/b/a IKONZ SPORTS BAR      *
& GRILL and DEWAYNE             *
PEARSON,                        *
                                *
        Defendants.             *

_____

**O R D E R**

_____

Before the Court is Plaintiff's motion for default judgment. (Doc. 12.)  For the following reasons, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART.**

**I. BACKGROUND**

Plaintiff is the exclusive domestic commercial distributor for the mixed martial arts promotion company, the Ultimate Fighting Championship ("UFC").  (Doc. 1, at 3.)  As such, Plaintiff "held the exclusive commercial license to distribute and authorize the public display of the following [UFC] and boxing pay-per-view broadcasts": "Tyson Fury vs. Deontay Wilder III," telecasted nationwide on October 9, 2021; "UFC 291: Poirier vs. Gaethje 2," telecasted nationwide on July 29, 2023; and "Canelo Álvarez vs. Jermell Charlo," telecasted nationwide on September 30, 2023

(collectively, the "Programs"). (Id. at 2.) Businesses could not show the Programs without purchasing the rights to do so from Plaintiff. (Id. at 4.) Defendants did not purchase those rights. (Doc. 12, at 3.)

Plaintiff alleges that Defendant Pearson "operated, maintained, and controlled" Ikonz Sportsbar & Grill ("Ikonz"), located at 1515 N. Leg Road, Augusta, Georgia 30909. (Doc. 1, at 2-3.) Plaintiff alleges Defendants advertised the broadcasts of the Programs on social media and enticed patrons to spend money on food and drinks while the broadcasts were publicly displayed (Id. at 6.) On October 9, 2021, Plaintiff sent an investigator who observed the unlawful exhibition of Tyson Fury vs. Deontay Wilder III, one of Plaintiff's programs at Ikonz. (Doc. 12-2, at 3; see Doc. 12-3.)

On October 7, 2024, Plaintiff filed this action for violations of 47 U.S.C. § 553 and 47 U.S.C. § 605. (Doc. 1, at 1.) On December 3, 2024, Plaintiff moved for entry of default, and the Clerk entered default against Defendants. (Docs. 10, 11.) On February 19, 2026, Plaintiff filed a motion for default judgment. (Doc. 12.)

## II. DISCUSSION

Under Federal Rule of Civil Procedure 55, a court may enter default judgment against a defendant when (1) both subject matter

2

and personal jurisdiction exist, (2) the allegations in the complaint state a claim against the defendant, and (3) the plaintiff shows the damages to which it is entitled. See Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356-58 (S.D. Ga. 2004) (citations omitted). "[A] defendant's default does not in itself warrant the court in entering a default judgment." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Default judgment is merited only "when there is a sufficient basis in the pleadings for the judgment entered." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (citation and internal quotation marks omitted). Furthermore, even with a default judgment, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003).

A "defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact" set forth in the complaint. Surtain, 789 F.3d at 1245 (citation omitted); Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (internal quotation marks and citation omitted)). Although well-pleaded allegations of fact are deemed

3

admitted, a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Surtain, 789 F.3d at 1245 (citation and internal quotation marks omitted).

## A. Jurisdiction

Before entering default judgment, the Court must ensure it possesses subject matter jurisdiction over the case and that the defendants are subject to personal jurisdiction. Here, the jurisdictional requirements are satisfied. First, Plaintiff contends that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. (Doc. 1, at 1.) Section 1331 provides that the United States district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Because this action arises under federal laws 47 U.S.C. § 553 and 47 U.S.C. § 605, the Court has subject matter jurisdiction over the matter. (Doc. 1, at 1, 7-8.) Second, Plaintiff alleges Defendant Pearson is a resident of Georgia and Defendant Ikonz is a Georgia limited liability company and conducts business in Augusta, Georgia. (Id. at 2.) Accordingly, the Court has personal jurisdiction over Defendants.

## B. Liability

Since the jurisdictional requirements are satisfied, the Court turns to the merits of the motion for default judgment. Plaintiff asserts claims under 47 U.S.C. §§ 553 and 605, which prohibit the interception of cable and satellite programming. (Id.

4

at 7.)   Although the Eleventh Circuit has not yet addressed the issue, other courts, including district courts in the Eleventh Circuit, have concluded plaintiffs may not recover under both sections 553 and 605 for the same conduct.  TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001); United States v. Norris, 88 F.3d 462, 469 (7th Cir. 1996); J & J Sports Prods., Inc. v. WB-Diversified Auto Servs., Inc., No. 1:15-cv-2171, 2016 WL 264935, at *2 (N.D. Ga. Jan. 21, 2016).  Rather, according to these courts, "[s]ection 605 prohibits commercial establishments from intercepting and broadcasting satellite programming, while [s]ection 553 addresses interceptions that occur through a cable network."  WB-Diversified, 2016 WL 269435, at *2 (citation omitted).  Like those courts, the Court concludes a plaintiff may not recover under both statutes.

Plaintiff does not specify in its complaint whether Defendants obtained and showed the Program through cable or satellite transmission.  (Doc. 1, at 5.)  However, because the elements of a claim under sections 553 and 605 are the same, the Court will "not fault [] Plaintiff for failing to plead the particular manner of interception since this may be exclusively in Defendant[s'] knowledge."  WB-Diversified, 2016 WL 269435, at *3 (citation omitted).

To succeed on a claim under either statute, a plaintiff must show the defendant: (1) "intercepted the program," (2) "did not

5

pay for the right to receive the transmission," and (3) "displayed the program to patrons of their commercial establishment." J & J Sports Prods., Inc. v. Just Fam, LLC, No. 1:09-cv-03072, 2010 WL 2640078, at *2 (N.D. Ga. June 28, 2010) (citation omitted). To hold an owner or officer of a venue liable, a plaintiff must show the owner or officer had a "right and ability to supervise the violations, and that he had a strong financial interest in such activities." Joe Hand Promotions, Inc. v. Blanchard, No. 4:09-cv-100, 2010 WL 1838067, at *3 (S.D. Ga. May 3, 2010) (citation omitted). "If a plaintiff establishes both a valid claim and the owner's liability, the court can hold the corporate defendant and individual owner jointly and severally liable." J & J Sports Prods., Inc. v. Flame Bar & Grill, LLC, No. CV 118-061, 2018 WL 5283447, at *2 (S.D. Ga. Oct. 24, 2018); see also Kingvision Pay-Per-View Corp., Ltd. v. El Torito Supermarket, Inc., No. 6:06-cv-657-Orl-18KRS, 2007 WL 1794158, at *3 (M.D. Fla. June 19, 2007) ("It appears that joint and several liability is available for violations of the Communications Act."); Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 852 (11th Cir. 1990) (affirmed award of joint and several damages between corporate and individual defendants).

Here, Plaintiff established both a valid claim and Defendant Pearson's liability as owner. First, Plaintiff established a valid claim by showing: (1) Defendants intercepted the Programs (2) for

6

free or at a nominal cost and (3) intentionally showed the Programs at Ikonz. (Doc. 1, at 6.) Second, Plaintiff established Pearson's liability because, by virtue of the default, Pearson admits: (1) he had supervisory control over Ikonz and (2) he had a direct financial interest in it. (Id. at 3.) Therefore, Defendants are jointly and severally liable for any damages awarded.

## C. Damages

Even with a default judgment, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." Philpot, 317 F.3d at 1266 (citations omitted). But a court need not conduct an evidentiary hearing when "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." FED. R. CIV. P. 55(b)(1); S.E.C. v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005). Both sections 605 and 553 allow plaintiffs to pursue either actual damages or statutory damages. Here, Plaintiff elects statutory damages. (Doc. 12-2, at 6.) For statutory damages under § 605, a court may award between $1,000 and $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). If a "court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," a court may award up to an additional $100,000 in enhanced damages. Id. § 605(e)(3)(C)(ii). Under § 553, a court may award between $250 and $10,000 in statutory damages for each violation, id. § 553(c)(3)(A)(ii), and up to $50,000 in enhanced

7

damages, id. § 553(c)(3)(B).  Plaintiff asks the Court to award a total of $110,000 in statutory and enhanced damages.  (Doc. 12, at 4.)

1. Statutory Damages

Courts in this circuit, including this Court, "have ordered defendants to pay, as statutory damages, the amount of the license fee that they would have been charged if they had actually been authorized to show the program."  Joe Hand Promotions, Inc. v. Flynt, No. 6:15-cv-56, 2016 WL 93861, at *3 (S.D. Ga. Jan. 7, 2016) (quoting Blanchard, 2010 WL 1838067, at *3).  Plaintiff determines the rate a venue must pay to show a particular program based on the venue's capacity.  (Doc. 12-4, at 3-4, 11-13.)  Thus, for the Court to determine the proper damages amount, Plaintiff must allege or otherwise indicate Ikonz's capacity.  Blanchard, 2010 WL 1838067, at *3 (citation omitted) (court could only apply the minimum statutory damages amount because plaintiff did "not allege[] or otherwise indicate[] the [defendant's] maximum occupancy").

Plaintiff provides commercial pricing charts for each of the Programs based on various fire code capacities, but Plaintiff does not provide the capacity for Ikonz.  (Doc. 12-4, at 11-13.)  However, Plaintiff's investigator states Ikonz's capacity was "35 people."  (Doc. 12-3, at 1.)  The Court finds the investigator's sworn statement sufficient to indicate Ikonz's capacity was 35.

With a capacity of 35, Defendants should have paid $775 to show Tyson Wilder vs. Deontay Fury III, $866 to show UFC 291: Poirier vs. Gaethje 2, and $1,250 to show Canelo Álvarez v. Jermell Charlo. (Doc. 12-4, at 11-13.) Because the rates for Tyson Wilder vs. Deontay Fury III and UFC 291: Poirier vs. Gaethje 2 are less than the $1,000 minimum award of statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II),[1] the Court awards Plaintiff statutory damages of $1,000 for Tyson Wilder vs. Deontay Fury III, $1,000 for UFC 291: Poirier vs. Gaethje 2, and $1,250 for Canelo Álvarez v. Jermell Charlo.

### 2. Enhanced Damages

Plaintiff also seeks $100,000 in enhanced damages because, Plaintiff contends, Defendants willfully committed the violation. (Doc. 12, at 3.) A court, in its discretion, may award enhanced damages when the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C §§ 605(e)(3)(C)(ii), 553(c)(3)(B). Willful conduct is "conduct showing disregard for the governing statute and an indifference to its requirements." Cable/Home, 902 F.2d at 851 (citation and internal quotation marks omitted). To

---

[1] Although 47 U.S.C. § 553(c)(3)(A)(ii) imposes a minimum award of statutory damages of $250, § 605(e)(3)(C)(i)(II) imposes a minimum award of statutory damages of $1,000. 47 U.S.C. §§ 553(c)(3)(A)(ii), 605(e)(3)(C)(i)(II). Because Plaintiff does not indicate which statute applies based on whether Defendants intercepted the Programs via satellite transmissions or by way of cable systems, the Court considers the $1,000 minimum imposed by § 605(e)(3)(C)(ii) in an abundance of caution.

determine whether a defendant acted willfully, many courts examine willfulness factors such as "the number of televisions broadcasting the event, the existence of a cover charge, sale of food or drink, advertisement of the event in the defendants' bar, and a demonstration that the defendants made more money or conducted additional business by illegally broadcasting the event." Flynt, 2016 WL 93861, at *3 (citation omitted).

If there is a willful violation, determining the amount of the enhancement is left to the discretion of the court. In some cases, courts find it appropriate to enhance the award by three times the statutory award. See Blanchard, 2010 WL 1838067, at *4-5 (awarded $1,000 in statutory damages and three times that for enhanced damages; $4,000 total damages). In other cases, courts choose a flat enhancement rate not based on the statutory amount. See Kingvision Pay-Per-View, Ltd., v. Rodriguez, No. 02 Civ. 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) ("enhancement of $1,000 for willfulness"). Regardless of a court's chosen equation, the court should "consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business." J & J Sports Prods., Inc. v. McCausland, No. 1:10-cv-01564, 2012 WL 113786, at *4 (S.D. Ind. Jan. 13, 2010) (citation omitted); see also Cable/Home, 902 F.2d at 852 ("[D]istrict court should consider

10

both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed.").

Here, Defendants' violation was willful. Defendants televised the Program on six televisions and promoted the Programs on social media before each broadcast. (Doc. 12-4, at 15-18; Doc. 12-3, at 1.) While the investigator did not pay a cover charge to enter Ikonz on October 9, 2021, the advertisements for the Alvarez vs. Charlo program shown on September 30, 2023 indicate Ikonz would charge a $3 cover charge. (Doc. 12-3, at 1; Doc. 12-4, at 18.) Plaintiff further alleges Defendants chose not to pay the proper commercial fees, affirmatively circumvented the sublicensing requirements, and instead unlawfully obtained each of the Programs for commercial use. (Doc. 1, at 5-6.) Plaintiff has shown that Defendants' violation was willful; thus, enhanced damages are appropriate.

Turning to the amount of enhanced damages, the Court finds Plaintiff's requested $100,000 would overcompensate Plaintiff. Ikonz has a relatively small capacity of 35 people, which limits its ability to conduct additional business and increase profits by illegally broadcasting the event. Plaintiff also does not provide evidence as to how much more money or additional business Defendants gained by illegally broadcasting the event. However, based on Plaintiff's allegations, Ikonz is not a single-offender but broadcasted multiple copyrighted programs without the proper

11

commercial license.   (Id. at 2.)   As such, the Court concludes that a proper enhanced damages award is $3,250.   This amount is equal to the statutory damages awarded to Plaintiff, which was based on the commercial licensing fees that Defendants should have paid to broadcast the Programs.   The increased amount beyond the $3,250 licensing fee provides a penalty and deterrence to the Defendants in this case and others in future situations who may be tempted to show copyrighted material without paying the proper fees.   Therefore, the Court **GRANTS** Plaintiff's motion as to liability and damages and awards Plaintiff statutory and enhanced damages in the amount of $6,500.

## D. Attorneys' Fees

Plaintiff also requests attorneys' fees under § 553(c)(2)(C) and § 605(e)(B)(iii), which allow for the recovery of reasonable attorneys' fees.   (Id. at 9.)   "The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." M.I.T., Inc. v. Medcare Exp., No. CV 114-081, 2014 WL 5149150, at *4 (S.D. Ga. Oct. 14, 2014) (quoting Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008)).   "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988) (citation omitted).

12

Generally, the "relevant legal community" is that of the place where the case is filed. Cullens v. Ga. Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994) (citation omitted). Because the Court is itself considered an expert on hourly rates in the community, it may consult its own experience in forming an independent judgment. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). The relevant legal market for this Court is the Augusta legal market, where the reasonable rate for more experienced attorneys is $450/hour, for other attorneys is $315/hour, and for paralegals is $150/hour. See Jackson v. Johnson, No. CV 123-074, Doc. 18, at 8-10 (S.D. Ga. Aug. 31, 2024); Whitesell Corp. v. Electrolux Home Prod., Inc., No. CV 103-050, 2021 WL 9316401, at *2 (S.D. Ga. July 20, 2021).

According to a billing invoice submitted, Plaintiff's counsel spent 14.6 hours working on this case, totaling $4,506 in fees. (Doc. 12-5, at 1-3.) The fees are based on hourly rates of $595 for Plaintiff's attorney and $225 for its paralegal.[2] (Id.) However, Plaintiff fails to submit the experience of counsel to support whether the hourly rate is reasonable. Nonetheless, both rates exceed the reasonable rates in this legal market, so the

---

[2] Plaintiff fails to state information regarding the experience or position of the professionals listed on the billing invoice. (Doc. 12-5, at 1-3.) However, Plaintiff's counsel's website lists the professional who billed at an hourly rate of $225, Ms. Carol Rideout, as a paralegal and not an attorney. For the Court to approve attorneys' fees, her rates should reflect those of a paralegal and not an attorney.

13

Court finds the hourly rates unreasonable. In determining the number of hours reasonably expended, the Court must consider whether the work was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citation and internal quotation marks omitted). Plaintiff's counsel spent 14.6 hours on this case, evidenced by detailed billing logs. (Doc. 12-5, at 1-2.) After analyzing the billing statements, the Court concludes Plaintiff's counsel exerted a reasonable amount of time in this litigation. Because the Court finds Plaintiff's attorneys' rates unreasonable, the Court **DENIES** Plaintiff's motion for default judgment as to attorneys' fees. Plaintiff may file a renewed motion for default judgment that addresses the issues discussed herein.

### III. CONCLUSION

Plaintiff's motion for default judgment is **GRANTED IN PART AND DENIED IN PART.** (Doc. 12.) The Court has found Plaintiff is entitled to damages and enhanced damages in the amount of $6,500. The Court **DENIES** the motion for damages above $6,500 and for attorneys' fees. Therefore, Plaintiff may file a renewed motion for default judgment as to attorneys' fees with an amended billing invoice and information detailing the experience of counsel within **FOURTEEN (14) DAYS** of the date of this Order.

14

15

ORDER  ENTERED  at  Augusta,  Georgia,  this  *30th* day  of
_____, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA